## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**KERALINK INT'L, INC.**          \*
          \*
          \*
    **v.**          \*      **Civil Action No. CCB-18-2013**
          \*
          \*
**STRADIS HEALTHCARE, LLC, et al.**   \*
          \*\*\*\*\*\*

### MEMORANDUM

Pending before the court in this products-liability action are Geri-Care Pharmaceuticals Corporation ("Geri-Care")'s motion to exclude the expert testimony of Stradis Healthcare, LLC ("Stradis")'s hybrid fact/expert witnesses (ECF 92), and Geri-Care's motions challenging the sufficiency of KeraLink International, Inc. ("KeraLink")'s and Stradis's responses to Geri-Care's requests for admission (ECF 94, 96).[1] The motions are fully briefed, and no oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, the motion to exclude will be granted in part and denied in part and the motions challenging the sufficiency of requests for admission will be denied in full.

### BACKGROUND

This litigation arises from the inclusion of contaminated sterile eye wash ("Geri-Care Eye Wash"), allegedly produced by defendants InSource, Inc. ("InSource") and/or Geri-Care, in sterile surgical packs used to recover corneal tissue. KeraLink, a national network of eye banks that recovers and distributes ocular tissue for use in corneal implants, purchased these from Stradis.

---

[1] Also pending are Geri-Care's motion for order to show cause (ECF 110), motions for summary judgment against Stradis (ECF 117) and KeraLink International, Inc. ("KeraLink") (ECF 118), and motion *in limine* to exclude certain damages (ECF 129); KeraLink's motion for summary judgment against Stradis and Geri-Care (ECF 123); and Stradis's motion for summary judgment against KeraLink (ECF 127). Those motions will be addressed in a separate memorandum.

(ECF 75, Second Am. Compl. ¶¶ 10, 13, 16–17). After the Eye Bank Association of America in 2017 notified its members that batches of Geri-Care Eye wash may be contaminated, KeraLink quarantined, and eventually could not use, some ocular tissue that had been recovered using Geri-Care Eye Wash, resulting in monetary damages. (ECF 75 ¶¶ 22–24, 28). KeraLink initiated this action in July 2018, and a month later, Stradis filed a third-party complaint against Insource and Geri-Care, seeking indemnification and contribution. (ECF 1; ECF 10). Discovery in this matter was initially scheduled to close on June 15, 2020. (ECF 63, Scheduling Order). Because of disruptions in the discovery schedule caused by the coronavirus pandemic, Geri-Care sought and the court granted a 60-day extension of the discovery period, to August 14, 2020. (ECF 88, May 12, 2020, Order extending discovery deadlines). On July 9, 2020, Geri-Care moved to exclude two of Stradis's witnesses from testifying as experts at trial (ECF 92). On July 30, 2020, and August 4, 2020, respectively, Geri-Care moved to challenge the sufficiency of certain of Stradis's responses to Geri-Care's requests for admission. (ECF 94, 96). These motions are ripe and ready for resolution.

## DISCUSSION

### I.  Motion *in Limine* to Exclude Hybrid Witnesses

Geri-Care moves to exclude as expert witnesses for Stradis two witnesses Stradis designated as hybrid fact/expert witnesses, Patrick Walker and Robin Nalley, arguing that Stradis's disclosure of Walker and Nalley was deficient under Rule 26(a)(2)(C).

On May 1, 2020, Stradis disclosed Walker as Stradis's Vice President of Operations at Stradis before, during and after the recall of Geri-Care Eye Wash and that he is expected to testify regarding the following:

> Mr. Walker is expected to testify based on his knowledge of Stradis'
> response to the October 2017 Notices and the January 2018 Geri-Care Eye Wash

recall, including but not limited to identification of possibly contaminated lot numbers and coordination for removal from use of such lot numbers. Additionally, Mr. Walker is expected to testify to his knowledge of Stradis' surgical packs, including, but not limited to, the contents of the surgical packs, the packaging of the surgical packs and the sterilization process of the surgical packs. Further, Mr. Walker will testify to Stradis' compliance with guidelines from the federal and Drug administration ("FDA") and the international Organization of Standards ("ISO") for Stradis' surgical packs. Finally, Mr. Walker is expected to testify regarding the financial impact on Stradis due to the October 2017 Notices and the January 2018 recall.

Mr. Walker's testimony will be based on his personal knowledge, training and experience in medical products, sterilization product validation and supply chain strategy. Also, these conclusions are based, in part, upon methodologies and practices widely accepted in these industries. Mr. Walker will also rebut all or part of any testimony of any expert who testifies on behalf of [KeraLink], [Geri-Care], or [InSource].

(Stradis's Expert Disclosure, ECF 92-2 at 1–2).

Robin Nalley was the Quality and Regulatory Manager for Stradis before, during and after the October 2017 Notices and the January 2018 recall of Geri-Care Eye Wash. Stradis disclosed that she is expected to testify as to the following:

[Ms.] Nalley is expected to testify based on her knowledge of Stradis' response to the October 2017 Notices and the January 2018 Geri-Care Eye Wash recall, including but not limited to identification of possibly contaminated lot numbers and coordination for removal from use of such lot numbers. Additionally, Ms. Nalley is expected to testify as to Stradis' investigation and her correspondence with representatives from KeraLink, Geri-Care, and InSource regarding Geri-Care Eye Wash that was included in Stradis surgical packs. Ms. Nalley will also testify as to her correspondence with recipients of Stradis surgical packs, which included Geri-Care Eye Wash. Further, Ms. Nalley will testify to the measures enacted by Stradis to mitigate further exposure to possible contamination from Geri-Care Eye Wash included in Stradis surgical packs.

Ms. Nalley's testimony will be based on her personal knowledge training and experience in quality assurance and regulatory compliance. Also, these conclusions are based, in part, upon methodologies and practices widely accepted in these industries. Ms. Nalley is expected to testify, generally, as to regulatory compliance and to rebut all or part of any testimony of any expert who testifies on behalf of KeraLink, Geri-Care, or InSource.

(ECF 92-2 at 2–3).

Under Local Rule 104.10, a party need not provide the comprehensive report required under Fed. R. Civ. P. 26(a)(2)(B) for the disclosure of expert witnesses retained by a party to provide expert testimony for witnesses designated as "hybrid fact/expert" witnesses. "The hybrid witness exception from additional disclosure requirements applies where 'testimony is given arising out of personal observations made in the normal course of duty.'" *Adell Plastics, Inc. v. Mt. Hawley Ins. Co.*, No. JKB-17-00252, 2019 WL 2359441, at *1 (D. Md. June 4, 2019) (quoting *Nat'l R.R. Passenger Corp. v. Ry. Express, LLC*, 268 F.R.D. 211, 216 (D. Md. 2010)).[2] For those hybrid fact/expert witnesses, the party need only "disclose the existence of any hybrid fact/expert witness pursuant to Fed. R. Civ. P. 26(a)(2)(A), and disclose the subject matter on which the witness is expected to present evidence under Fed. R. Evid. 702, 703, or 705, as well as a summary of the facts and opinions to which the hybrid fact/expert witness is expected to testify, pursuant to Fed. R. Civ. P. 26(a)(2)(C)." Local Rule 104.10 (D. Md. 2018). "This disclosure is considerably less extensive than the report required by Rule 26(a)(2)(B)" and does not require "undue detail," Fed. R. Civ. P. 26(a)(2)(C) advisory committee's note to 2010 Amendment, but neither will "vague generalizations" as to the subject matter of the testimony or opinions of the witness suffice, *Meredith v. Int'l Marine Underwriters*, No. JKB-10-837, 2011 WL 1466436, at *7 (D. Md. Apr. 18, 2011). "The [c]ourt understands the rule's reference to 'facts' to include those facts upon which the witness' opinions are based, and 'opinions' to include a precise description of the opinion." *Id.*

Stradis has adequately disclosed the subject matters of Walker and Nalley's testimony under Rule 26(a)(2)(C)(i) by detailing a thorough list of topics the witnesses expect to cover: for example, *e.g.* "Mr. Walker is expected to testify to his knowledge of Stradis' surgical packs, including, but not limited to, the contents of the surgical packs, the packaging of the surgical packs

---

[2] Unpublished opinions are cited for the soundness of their reasoning and not for any precedential value.

and the sterilization process of the surgical packs" and "Ms. Nalley will testify to the measures enacted by Stradis to mitigate further exposure to possible contamination from Geri-Care Eye Wash included in Stradis surgical packs." (ECF 92-2). But Stradis's disclosures contain no information regarding the facts or opinions to which either witness is expected to testify. *See* Fed. R. Civ. P. 26(a)(2)(C)(ii). For example, Nalley is expected to testify as to regulatory compliance generally, "based on her personal knowledge, training and experience in quality assurance and regulatory compliance" and "upon methodologies and practices widely accepted in these industries," but Stradis does not disclose what regulatory compliance practices Nalley's testimony will concern or her conclusions regarding regulatory compliance as it relates to this case. (ECF 92-2 at 3). Without the facts or opinions to which Nalley and Walker expect to testify, Stradis's disclosures are incomplete and fail to comply with Rule 26(a)(2)(C). *See, e.g.*, *Ace Am. Ins. Co. v. McDonald's Corp.*, No. GLR-11-3150, 2012 WL 2523883, at *4 (D. Md. June 28, 2012).

Federal Rule of Civil Procedure 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

> [I]n exercising its broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis, a district court should be guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003).

Should either Walker or Nalley testify, the lack of information regarding their expert opinions and the facts underlying them would leave Geri-Care to "guess about the missing

information and [] unable to prepare for and conduct a meaningful examination of the . . . witnesses" as to their expert testimony. *Fordec Realty Corp. v. Travelers Excess & Surplus Lines Co.*, No. 18-CV-85 (ALC) (KNF), 2019 WL 3817213, at *9 (S.D.N.Y. Aug. 14, 2019), *aff'd*, No. 1:18-CV-00085 (ALC), 2020 WL 1445711 (S.D.N.Y. Mar. 25, 2020). The first factor thus weighs in favor of Geri-Care.

The second factor also weighs in favor of exclusion. Stradis argues any surprise caused by the deficiency can be cured as Geri-Care has already identified the deficiency, and at the time of the motion, there were several weeks of discovery remaining. Stradis also notes Geri-Care did not, after receiving the disclosures, choose to depose either Walker or Nalley. The court disagrees that merely identifying the nature of the deficiency mitigates the surprise—a motion to exclude based on non-disclosure may ultimately lead to the cure of surprise if the moving party gains some relief, but bringing the non-disclosure to the court's attention does not necessarily bring the moving party out of the dark. Geri-Care's choice not to depose Walker and Nalley also does not mitigate the surprise. To conclude otherwise "would shift to the opposing party the burden that Rule 26 indisputably places on the party calling the witness" to disclose the information required by the Rule. *Meredith*, 2011 WL 1466436, at *6. While Stradis had time to supplement its disclosures with the information required by Rule 26(a)(2)(C) in the few weeks that remained in discovery when the motion was filed, it chose not to do so. And even if Stradis had properly supplemented the disclosures, it is not clear there was sufficient time for Geri-Care to determine whether, in light of the disclosures, it should depose Walker or Nalley after all.

The third factor is neutral. Neither party contends allowing the evidence would disrupt trial, which has not yet been scheduled.

With regard to the importance of the evidence, Stradis argues that Walker and Nalley "both have critical information that is beneficial to assessing the issues of the case for all parties," but it does not elaborate on what that information is or whether Walker and Nalley are the only sources of this undefined "critical" information. (ECF 93, Opp'n at 5). *Compare with Ace*, 2012 WL 2523883, at *5 (in personal injury case, improperly disclosed testimony of treating physician critical where the party offering the evidence had retained no liability expert and thus no other source of medical evidence). This conclusory assertion does not persuade the court that Walker and Nalley's expert testimony is particularly vital to Stradis's case.

Finally, Stradis's explanation for the nondisclosure is that it believed it properly complied with Rule 26 and that its disclosures were not deficient. At least one court in this district has found that a genuine and clear lack of understanding of the requirements of Rule 26(a)(2)(C) weighed against exclusion, as "Rule 26 disclosures have been a trap for the unwary for quite some time." *Id.*, at *5 (internal quotation marks omitted). But even if Stradis genuinely believed it properly disclosed Walker and Nalley, in this case that would not outweigh the prejudice to Geri-Care, as there is not sufficient time to cure the error. *See id.* (denying motion to exclude where there was sufficient time to supplement Rule 26(a)(2) disclosures, the witness's testimony was critical, and the nonmoving party did not understand the requirements of Rule 26(a)(2)(C)).

Accordingly, the *Southern States* factors weigh in favor of finding that Stradis's deficient disclosure is neither substantially justified nor harmless, and the motion to exclude Walker and Nalley is granted as to their proposed expert testimony. The motion is denied in that Walker and Nalley will be permitted, as the parties have agreed, to testify as fact witnesses. (ECF 93, Opp'n at 5–6; ECF 95, Reply at 8).[3]

---

[3] The court will not at this time attempt to draw the line between admissible fact witness testimony and excluded expert opinion testimony as Geri-Care requests. (ECF 95, Reply at 8).

## II. Sufficiency of Responses to Geri-Care's Requests for Admission

Geri-Care moves to deem admitted certain of KeraLink's and Stradis's responses to Geri-Cares Requests for Admissions to each party, or for an order requiring amended answers, arguing that the responses were insufficient under Federal Rule of Civil Procedure 36. "Under Rule 36, the parties to litigation may request from their adversaries admissions regarding purely factual matters or the application of law to facts, but not matters of law. . . . The purpose of such admissions is to narrow the array of issues before the court, and thus expedite both the discovery process and the resolution of the litigation." *Adventis, Inc. v. Consol. Prop. Holdings, Inc.*, 124 F. App'x 169, 172 (4th Cir. 2005) (citations omitted); *see also* Fed. R. Civ. P. 36(a).

Under Rule 36, "[i]f a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it." Fed. R. Civ. P. 36(a)(4). "[W]hen good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest." *Id.* If the answering party asserts lack of knowledge or information as a reason for failing to admit or deny the matter, the party must state "that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." *Id.* A general statement that a party can neither admit nor deny and that reasonable inquiry has been made is an insufficient response—an answer that a party can neither admit nor deny must be accompanied by reasons. *Lynn v. Monarch Recovery Mgmt., Inc.*, 285 F.R.D. 350, 364 (D. Md. 2012). What constitutes a "reasonable inquiry" depends on the facts of the case but is generally "limited to review and inquiry of those persons and documents that are within the responding party's control" and does not "require a respondent to ascertain from persons, known to him and to the court to be hostile or interested in the outcome of the suit, facts upon which to predicate a sworn response." *CX Reinsurance Co. v. Johnson*, No. RWT-15-3132, 2018 WL 10075929, at *2 (D. Md. Jan. 24, 2018) (alterations omitted) (quoting *T.*

8

*Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co.*, 174 F.R.D. 38, 43 (S.D.N.Y. 1997);

*Dulansky v. Iowa-Illinois Gas & Elec. Co.*, 92 F. Supp. 118, 123 (S.D. Iowa 1950)).

 The court will order a matter "admitted where a party responds to a Rule 36 request in bad

faith or does so evasively," *Ball-Rice v. Bd. of Ed. of Prince George's Cnty.*, No. PJM-11-1398,

2013 WL 2299725, at *2 (D. Md. May 24, 2013) (citing cases), and also if a party fails to respond

to the substance of the question, *Lynn*, 285 F.R.D. at 363. "Courts examining motions regarding

the sufficiency of a Rule 36 response may deny relief where the responding party can provide some

explanation that contextualizes a challenged response." *Ball-Rice*, 2013 WL 2299725, at *2 (citing

*Lynn*, 385 F.R.D. at 366–67). The court must also view motions for relief under Rule 36 "in light

of the purpose of requests for admission: 'to narrow the array of issues before the court, and thus

expedite both the discovery process and the resolution of the litigation.'" *Singhal & Co., Inc. v.

VersaTech, Inc.*, No. JKB-19-1209, 2020 WL 6119325, at *5 (D. Md. Oct. 16, 2020) (quoting

*Adventis*, 124 F. App'x at 172). Relief may be inappropriate where the request "breed[s] additional

litigation because one party is dissatisfied with the answer of another." *Id.* (quoting *Nat'l

Semiconductor Corp. v. Ramtron Int'l Corp.*, 265 F. Supp. 2d 71, 74 (D.D.C. 2003)). For example,

"courts decline to evaluate the *bona fides* or truthfulness of responses to requests for admission,

which would 'encourage[] more litigation, the converse of the purpose behind permitting one party

to demand the other to admit the truth of a certain statement.'" *Id.* (quoting *Nat'l Semiconductor*,

265 F. Supp. 2d at 74–75). Rule 36 also gives the court discretion to "defer its final decision until

a pretrial conference or a specified time before trial." Fed. R. Civ. P. 36(a)(6).

 **a.   KeraLink's Responses to Geri-Care's RFAs**

 Initially, KeraLink argues Geri-Care's motion should be denied for failure to comply with

Local Rule 104.8(b), which requires counsel to meet and confer before the court will consider a

motion to compel discovery, and for failure to include a certification of a good-faith attempt to meet and confer under Fed. R. Civ. P. 37(a)(1). The procedures in Rule 104.8, including the meet and confer requirement, must be followed only "in litigating motions to compel answers to interrogatories and requests for production[.]" Local Rule 104.8 (D. Md. 2018). Similarly, Rule 37(a) governs motions to compel disclosures under Rule 26(a); answers under Rules 30, 31, and 33; designations under Rules 30(b)(6) and 31(a)(4); and documents and inspections under Rule 34. *See* Fed. R. Civ. P. 37(a)(3). Neither the local rules nor Rule 37(a) require the aforementioned processes prior to a motion challenging the sufficiency of requests for admission, which are governed by Rule 36. Local Rule 104.7, however, requires that counsel make "sincere attempts to resolve" discovery disputes before they are brought to the court and requires that counsel submit a certificate reciting (a) the date, time and place of the discovery conference and the names of its participants, or (b) counsel's attempts to hold such a conference without success, and (c) an itemization of issues requiring resolution. *See* L.R. 104.7. While requests for admission are not necessarily categorized as discovery devices, *see Nat'l Semiconductor*, 265 F. Supp. 2d at 74, compliance with Rule 104.7 is good practice and has been considered a prerequisite to consideration of a motion challenging the sufficiency of requests for admission, *see Singhal*, 2020 WL 6119325, *4. While Geri-Care has not filed a certificate compliant with the Rule, at this point, the court believes it is more expeditious to consider the disputes on their merits.

### i. Requests 6, 9, 12, 15, and 18

Geri-Care's Requests 6, 9, 12, 15, and 18 concern the location of recovery for various pieces of ocular tissue in the possession of KeraLink. Request 6 is representative of this category of request and of KeraLink's response:

> **Request 6:** Admit that, with respect to the tissue listed in Exhibit A and whose Tissue ID# begins with "FL," such tissue was recovered at a KeraLink eye bank(s) in Florida.
>
> **Response:** Denied. [The recoveries did not occur at the eye banks, they occurred at hospitals or morgues.]

(ECF 94-1, Mot. at 4). Exhibit A to Geri-Care's requests for admission to KeraLink is a spreadsheet listing various ocular tissues by a "Tissue ID#." (ECF 94-2, Exh. A). Each Tissue ID# has a prefix consisting of two capital letters (e.g., FL, SA, NE). (*Id.*). Requests 9, 12, 15, and 18, request that KeraLink admit that with respect to Tissue ID#s SF, NE, SA, and MD, those tissues were recovered at KeraLink eye banks in California, Massachusetts, Texas, and Maryland, respectively. (ECF 94-1, Mot. at 7, 8, 9). KeraLink denied those requests in full. (*Id.*).

Geri-Care contends these responses are insufficient in that they do not respond to the substance of the question which, in Geri-Care's view, was "obviously intended" to determine whether the ocular tissue marked with a certain prefix (e.g. "FL") was recovered in a particular state (e.g. Florida). (*Id.* at 5). Yet the RFAs do not ask KeraLink to admit the general location of the recovery; rather they ask whether the tissue was recovered at one of KeraLinks's "eye banks" within a particular state. KeraLink's unequivocal denial sufficiently responds to those requests. It is also clear from other discovery on this issue that KeraLink's response is not an attempt at evasion. KeraLink's corporate designee testified in a Rule 30(b)(6) deposition that the prefix of a Tissue ID# was not a definitive indication of where the recovery of the tissue took place. (ECF 101-3, 30(b)(6) Dep. 97:8–10). Only the individual donor record for the tissue would indicate the location of recovery. (*Id.* 97:11–15). Accordingly, the court finds KeraLink's responses to requests 6, 9, 12, 15, and 18 comply with Rule 36 and will deny Geri-Care's motion with respect to those requests.

### ii.   Requests 7, 10, 16, and 19

Geri-Care's requests 7, 10, 16, and 19 concern the location of storage for ocular tissue. Request 7 is representative of this category of request and of KeraLink's response.

> **Request 7:** Admit that, with respect to the tissue listed in Exhibit A and whose Tissue ID# begins with "FL," such tissue was stored at a KeraLink eye bank(s) in Florida.
>
> **Response:** Admitted that such tissue was stored for some amount of time in Florida, but could also have been stored in various locations outside of Florida.

(ECF 94-1, Mot. at 5). Requests 10, 16, and 19 request that KeraLink admit that with respect to Tissue ID#s SF, SA, and MD, those tissues were stored at KeraLink eye banks in California, Texas, and Maryland, respectively. (*Id.* at 6, 8, 9). KeraLink's responses to those requests was identical to that of its response to request 7. (*Id.*).

Geri-Care argues that a good faith response to these requests must indicate which tissues *specifically* were stored in a particular state and which were not and also that the qualification that tissues with a Tissue ID# indicating a particular state could also have been stored outside of that state is "evasive and speculative." (*Id.* at 5). The court reads KeraLink's responses to broadly admit that any tissue with a Tissue ID# indicating a particular state (e.g., "SA" for Texas) was stored for some period of time in that state. In this way, the responses adequately respond to the substance of the question. KeraLink's qualification to its admission is neither speculative nor evasive. KeraLink asserts that the ocular tissue at issue was not stored exclusively at certain eye banks from the date of recovery until the point of transplant or other use, (ECF 98, Opp'n at 3), and thus it qualified its admission accordingly. *See* Fed. R. Civ. P. 36(a)(4) ("[W]hen good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest."). Geri-Care presents no indication this response is in bad faith or otherwise insufficient. Accordingly, the court finds KeraLink's responses to requests 7, 10, 16, and 19 comply with Rule 36 and will deny Geri-Care's motion with respect to those requests.

### iii.   Requests 14 and 20

Requests 14 and 20 concern the location where certain ocular tissue was exposed to and allegedly contaminated by Geri-Care Eye Wash.

> **Request 14:** Admit that, with respect to the tissue listed in Exhibit A and whose Tissue ID# begins with "NE," any contamination of that tissue by Geri-Care Eye Wash, if such contamination occurred, would have occurred in Massachusetts.

> **Response:** Denied.

(ECF 94-1, Mot. at 7). ). Request 20 requests that KeraLink admit that, with respect to Tissue ID#s beginning with "MD," any contamination of those tissues occurred in Maryland. (*Id.* at 10). KeraLink denied request 20 in full. (*Id.*)

Geri-Care argues that a summary denial of these requests is insufficient because records "clearly show" that at least some recovery procedures, during which contamination would have taken place, took place in Massachusetts, and thus KeraLink is required to specify which individual tissues with Tissue ID #s beginning with "NE" were contaminated in Massachusetts and which beginning with "MD" were contaminated in Maryland. Geri-Care identified this alleged deficiency in a letter to KeraLink and requested that it supplement the admission. (ECF 101-1, Deficiency Ltr. at 3–4). KeraLink responded that the request to supplement was unduly burdensome, overly broad, and irrelevant, objections it maintains in the instant motion. (ECF 101-2, KeraLink Ltr. to Geri-Care at 1, 3).

KeraLink argues supplementing requests 14 and 20 would be unduly burdensome because, as explained previously, the Tissue ID# does not indicate the state of recovery; only a review of each individual donor file for an ocular tissue would reveal the state of recovery and thus the state of alleged contamination. KeraLink's Rule 30(b)(6) deponent testified that a review of each donor record would take approximately twenty minutes, and that not all of the records were in one place; it would take several days to request and receive the relevant files from storage facilities. (ECF

101-3, 30(b)(6) Dep. 100:19–101:3, 101:16–24). It appears that Exhibit A includes nearly 270 ocular tissues with Tissue ID#s beginning with "MD" or "NE." (ECF 94-2, Exh. A). Thus, according to KeraLink's estimation, determining the state of recovery for each tissue could take several days to receive the necessary files, and more than 5,400 minutes, or 90 hours, to review them.

As to relevance, Geri-Care seeks information regarding the state of contamination for ocular tissue on the basis that the states in which contaminations occurred will be determinative as to choice of law issues in this case. Maryland applies in tort actions the law of the state where the injury occurred. *See, e.g.*, *Hauch v. Connor*, 295 Md. 120, 123–24 (1983). KeraLink asserts the injury occurred in Maryland where its economic losses were felt, (ECF 98, Opp'n at 4), while Geri-Care asserts KeraLink's injuries are felt where the contaminations occurred, in multiple states, (ECF 101, Reply at 6). Geri-Care appears to have raised this choice of law issue in its motion for summary judgment against KeraLink. (*See* ECF 118-1 at 13–14.)

Balancing the burden on KeraLink[4] with the relevance of the information, the court is not persuaded to order KeraLink to supplement its responses at this time. The court does not believe it will be necessary to understand how many tissues were contaminated in each state in order to determine whether it must apply the law of each state in which contamination occurred—the parties appear to share an understanding that if Geri-Care is correct, the relevant states are California, Connecticut, District of Columbia, Florida, Maryland, Maine, Massachusetts, New Hampshire, Rhode Island, Texas, Vermont, and Virginia. (ECF 118-1 at 14; ECF 123-1 at 19).

---

[4] Geri-Care also argues that KeraLink's objection to these requests are not supported by specific facts that indicate the nature and extent of the burden. *See, e.g.*, *Singhal & Co.*, 2020 WL 6119325, at *4 ("In responding to requests for admission, 'objections must be specific, non-boilerplate and supported by particularized facts where necessary to demonstrate the basis for the objection.'") (quoting *Hall v. Sullivan*, 231 F.R.D. 468, 470 (D. Md. 2005)). The court disagrees. An estimate of a specific amount of time it would take to review the records provides the requisite factual basis for the objection. Geri-Care contends this estimate is speculative but does not support its assertion.

Because the court can resolve the dispute without KeraLink expending several days-worth of time to ascertain the states of recovery, in the interest of conserving resources, the court will deny Geri-Care's motion with respect to requests 14 and 20.

### iv.   Request 22

Finally, request 22 concerns the location of losses KeraLink reported:

> **Request 22:** Admit that over 50% of the total loss that you reported in Exhibit B was due to the potential or actual contamination of ocular tissue at KeraLink's Florida eye bank(s).
>
> **Response:** Denied.

(ECF 94-1, Mem. at 10–11). Exhibit B is a spreadsheet that appears to summarize the financial impact of contamination of KeraLink ocular tissue. (*See* ECF 94-3, Exh. B). Geri-Care argues KeraLink's response to request 22 is insufficient because it conflicts with KeraLink's admission in response to request 8 that any contamination of tissue in Exhibit A occurred in Florida, and asks the court to order KeraLink to explain the basis of its denial. The court does not view the responses to requests 8 and 22 as inconsistent, as KeraLink has maintained that tissue recovery did not occur, as request 22 assumes, at KeraLink's eyebanks. The response appears to respond to the substance of the request and unequivocally denies it. Accordingly, the court will deny Geri-Care's motion with respect to request 22.

***

In sum, the court finds that all of KeraLink's challenged responses to Geri-Care's requests for admission are either satisfactory under Rule 36 or not appropriate for supplementation at this time. Geri-Care's motion as to KeraLink's responses will be denied in full.

**b. Stradis's RFAs**

    **i. Requests 5, 6, 7, 8, 10**

Requests 5, 6, 7, 8, and 10 concern the dismissal of a lawsuit Stradis filed against Kareway

Products.

> **Request 5:** Admit that, with respect to the lawsuit [*Stradis Healthcare, LLC v. Kareway Products Inc., et al.*, CV 19-687 PA (SKx) (C.D. Cal. 2019], the court granted a motion to dismiss the original complaint after finding that you failed to allege the domiciles of each of your members.
>
> **Response:** Stradis admits that the court dismissed the original complaint. Stradis denies the remaining statements in this Request.
>
> **Request 6:** Admit that, with respect to the lawsuit [*Stradis Healthcare, LLC v. Kareway Products Inc., et al.*, CV 19-687 PA (SKx) (C.D. Cal. 2019], the court granted you leave to file an amended complaint to fix the pleading defects in the original complaint.
>
> **Response:** Stradis admits that the court granted leave to amend. Stradis denies the remaining statements in this request.
>
> **Request 7:** Admit that, with respect to the lawsuit [*Stradis Healthcare, LLC v. Kareway Products Inc., et al.*, CV 19-687 PA (SKx) (C.D. Cal. 2019], although you filed an amended complaint, you did not allege the domiciles of each of you[r] members in the amended complaint.
>
> **Response:** Stradis admits that it filed an amended complaint. Stradis denies the remaining statements in this Request.
>
> **Request 8:** Admit that, with respect to the lawsuit [*Stradis Healthcare, LLC v. Kareway Products Inc., et al.*, CV 19-687 PA (SKx) (C.D. Cal. 2019], the court dismissed the amended complaint without prejudice due to your failure to adequately plead a basis for subject matter jurisdiction.
>
> **Response:** Stradis admits that the court dismissed the amended complaint. Stradis denies the remaining statements in this Request.
>
> **Request 10:** Admit that, with respect to the lawsuit [*Stradis Healthcare, LLC v. Kareway Products Inc., et al.*, CV 19-687 PA (SKx) (C.D. Cal. 2019], you intended, prior to the dismissal of the suit, to move to transfer that case, as well as KeraLink's lawsuit, to a single court pursuant to the procedures for multidistrict litigation set forth in 28 U.S.C. § 1407 et seq.
>
> **Response:** Denied.

(ECF 96-1, Mot. at 5–7). The thrust of Geri-Care's argument as to these responses is that court documents in *Stradis v. Kareway* tend to support the above assertions requested to be admitted, and thus the partial or full denials of the requests are inadequate under Rule 36. Geri-Care requests that the court compel Stradis to explain the basis for its partial or full denials or take judicial notice of various documents in the California case and deem the requests admitted. This request asks the court to consider and determine the truthfulness and/or accuracy of Stradis's responses. The court declines to do so at this stage of the litigation. *See Nat'l Semiconductor*, 265 F. Supp. 2d at 74–75 ("[T]he validity, or *bona fides*, of a[n] . . . answer to a request for admission must await the trial to see if the party forced to prove what was not admitted can meet the requirements of th[e] rule."). Accordingly, Geri-Care's motion will be denied with respect to requests 5, 6, 7, 8, and 10.

### ii.   Requests 1 and 2

Request 1 states, "Admit that Stradis Healthcare, LLC is not your legal name." (ECF 96-1 at 4). Stradis denied this request in full. (*Id.*).

Request 2 states, "Admit that your legal name is Stradis Medical, LLC." (*Id.* at 5). Stradis denied this request in full. (*Id.*).

Geri-Care argues these responses are not in good faith because a printout from the Georgia Corporations Division shows that an entity called "Stradis Medical, LLC" is registered with the state. (ECF 96-2, Exh. A). The court finds Stradis's responses are unequivocal denials that comply with Rule 36(a)(4). To the extent Geri-Care submits evidence it believes undermines the truth of the denials, this does not necessarily indicate a lack of good faith, and the court declines to consider the validity of Stradis's responses at this stage. *See Nat'l Semiconductor*, 265 F. Supp. 2d at 74–75. Accordingly, Geri-Care's motion will be denied with respect to requests 1 and 2.

### iii.   Requests 11, 12, 14, 15, and 16

17

Requests 11, 12, 14, 15, and 16 concern "Exhibit A" to Geri-Care's requests, a partial copy of a Stradis Custom Strad-Pak contents list. (*See* ECF 96-8, Exh. G). The requests state:

> **Request 11:** Admit that the document set forth in Exhibit A, which you have produced in response to request for production, indicates that the "sterile eye wash" is among the "non-sterile components" of your Custom Stradi-Paks.

> **Request 12:** Admit that the document set forth in Exhibit A, or one that was similar insofar as it referred to the eyewash as a "non-sterile component," accompanied all the Custom-Stradi Paks for Lot 17074129853.

> **Request 14:** Admit that the document set forth in Exhibit A, or one that was similar insofar as it referred to the eye wash as a "non-sterile component," accompanied all Custom Stradi-Paks that contained Geri-Care Eye Wash and which were sold to KeraLink eye banks.

> **Request 15:** Admit that the document set forth in Exhibit A, or one that was similar insofar as it referred to the eye wash as a "non-sterile component," accompanied all Custom Stradi-Paks that contained Geri-Care Eye Wash and which were sold to KeraLink eye banks in 2017.

> **Request 16:** Admit that the document set forth in Exhibit A, or one that was similar insofar as it referred to the eye wash as a "non-sterile component," accompanied all Custom Stradi-Paks that contained Geri-Care Eye Wash and which were sold to KeraLink eye banks in Maryland, Massachusetts, Texas, Florida, and California in 2017.

(ECF 96-1, Mot. at 8–9, 11–12). To all of these requests, Stradis' responded: "Exhibit A is a document that speaks for itself. Exhibit A is a partial copy of a Stradis Custom Strad-Pak contents list for TBI Ocular Recovery Combo Pack, which lists '(1) STERILE EYE WASH" under the column of "NON-STERILE COMPONE[N]TS.' Stradis denies the remaining statements in this request." (*Id.*).

Geri-Care argues that Stradis's responses fail to answer the substance of the questions. The court disagrees. Stradis's answers are appropriate partial admissions qualified by denials under Rule 36(a)(4) as they admit what is contained within the document "Exhibit A" and unequivocally deny the remainder of the requests, which seek additional admissions regarding the document's

18

meaning and whether it or a similar document accompanied all Custom Stradi-Paks. Accordingly, the court will deny Geri-Care's motion as it relates to requests 11, 12, 14, 15, and 16.

### iv.  Request 13

Request 13 states, "Admit that the document set forth in Exhibit A, or one that was similar insofar as it referred to the eye wash as a 'non-sterile component,' accompanied all Custom Stradi-Paks that contained Geri-Care Eye Wash." (ECF 96-1, Mot. at 10). Stradis objected that the request was "overly broad, unduly burdensome, and is not reasonably calculated to lead to the discovery of admissible evidence," and answered that Exhibit A "speaks for itself" and that:

> As Custom Stradi-Paks have been compiled for a number of different customers for use in a variety of applications over the years, Stradis lacks sufficient information to admit or deny that a document "similar" to Exhibit A accompanied all Custom Stradi-Paks that contained Geri-Care Eye Wash. Therefore, Stradis denies the remaining statements in this Request.

(*Id.*). Geri-Care argues Stradis's objections are not stated with the requisite specificity and the inclusion of Exhibit A in Custom Stradi-Paks is relevant to Stradis's and KeraLink's breach of warranty claims. It further argues that Stradis's assertion of lack of knowledge is deficient under Rule 36(a)(4) because Stradis does not state it has made "reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." The court disagrees. Stradis supplemented its response to request 13 in its response to Geri-Care's initial deficiency letter to assert that it made such reasonable inquiry (*see* ECF 105-1 at 3) and its assertion is supported by its original response that the variability of Custom Stradi-Paks over time means that it is not able to admit or deny that a document similar to Exhibit A accompanied all Stradi-Packs that contained Geri-Care Eye Wash. Accordingly, the court denies Geri-Care's motion with respect to request 13.

### v.  Request 19

Request 19 states, "If you do not admit Request 18, admit that all of the Custom-Stradi Paks contained in the lots described in the document attached as Exhibit B contained a document indicating that the eye wash was a 'non-sterile component.'" (ECF 96-1, Mot. at 12). "Exhibit B" to Geri-Care's requests for admission is an email chain between Robin Nalley of Stradis and Paul Graves which references the use of Geri-Care Eye Wash in "lots 17256134054 and 172784738 . . . [and] lot# 86041601 as well." (ECF 96-9, Exh. H). Stradis responded that "the contents list for Custom Stradi-Paks speak for themselves," and a contents list of a Custom Stradi-Pak that contained Geri-Care Eye Wash "would list[] the Geri-Care Eye Wash as '(1) STERILE EYE WASH' under the column of 'NON-STERILE COMPONE[N]TS.'" (ECF 96-1, Mot. at 12–13). Stradis denied the remainder of the request. (*Id.*).

Geri-Care argues that Stradis's response fails to answer the substance of the request and asks that the court deem the request admitted or order Stradis to clarify the basis of its denial. Stradis's answer is an appropriate partial admission qualified by a denial under Rule 36(a)(4) as it admits that any contents list for a Custom Stradi-Pak containing Geri-Care Eye Wash, presumably including those for the lots referenced in "Exhibit B," would have listed the eyewash as "sterile eye wash" under the column of "non-sterile components," and denies the remainder of the request, which appears to seek an admission as to the meaning of inclusion of a product under the column "non-sterile component." Accordingly, the court will deny the motion as it relates to request 19.

### vi.   Request 21

Request 21 states, "Admit that eye wash was a component part of the product KeraLink has referred to as Custom Stradi-Paks." (ECF 96-1, Mot. at 13). Stradis denied this request in full. (*Id.*).

Geri-Care argues that Stradis has admitted elsewhere that "Custom-Stradi Paks" contained documents that indicated the product had eyewash and thus an outright denial of this request, without an explanation, does not comply with the rules. The court finds Stradis's response is an unequivocal denial that complies with Rule 36(a)(4). To the extent Geri-Care references evidence it believes undermines the truth of the denials, this does not necessarily indicate a lack of good faith or evasion, and the court declines to consider the validity of Stradis's responses at this stage. *See Nat'l Semiconductor*, 265 F. Supp. 2d at 74–75. Accordingly, Geri-Care's motion will be denied with respect to request 21.

### vii.   Requests 22–26

Geri-Care asks the court to deem requests 22–26 admitted in their entirety because Stradis answered as to each of these requests that it "lacks sufficient knowledge to admit or deny this Request and therefore denies this Request" without stating that it has made reasonably inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny. (ECF 96-1, Mot. at 13–15). Requests 22–26 state:

> **Request 22:** Admit that the contamination of ocular tissue KeraLink has alleged in its Second Amended Complaint would have occurred at the moment technicians at KeraLink eye banks applied the Geri-Care Eye Wash to the eyes of donors during the ocular tissue recovery procedure.
>
> **Request 23:** Admit that the majority of ocular tissue that KeraLink has alleged was rendered unusable by either actual or potential exposure to Geri-Care Eye Wash was recovered at KeraLink's Florida eye bank(s).
>
> **Request 24:** Admit that over 50% of the total loss KeraLink has alleged was caused by the contamination stemmed from the potential or actual contamination of ocular tissue at KeraLink's Florida eye bank(s).
>
> **Request 25:** Admit that KeraLink and Geri-Care never entered into an oral contract regarding the sale of Geri-Care Eye Wash.
>
> **Request 26:** Admit that KeraLink and Geri-Care never entered into a written contract regarding the sale of Geri-Care Eye Wash.

Stradis supplemented its responses to requests 22–26 in its response to Geri-Care's initial deficiency letter to assert that it made a reasonable inquiry into these requests, (*see* ECF 105-1 at 3), but this general statement is not accompanied by an explanation of the inquiry or further reasons for the inability to admit or deny. *See Lynn*, 285 F.R.D. at 364. Nevertheless, the court finds the insufficiency harmless. These requests seek admissions as to information regarding the use of Geri-Care Eye Wash once it was no longer in Stradis's possession and regarding KeraLink's relationship with Geri-Care, information not obviously within Stradis's control and for which a reasonable inquiry would likely require Stradis to seek information from its adversaries. Because Stradis was not required to seek out "facts upon which to predicate a sworn response" from a hostile party, the court will deny the motion to have requests 22–26 admitted. *See CX Reinsurance*, 2018 WL 10075929, at *2, 3.

     **viii.   Request 30**

Request 30 states, "Admit that, with respect to any Custom Stradi-Paks that were ordered by KeraLink's eye banks in Florida, California, Texas, Maryland and Massachusetts, Stradis delivered the Custom Stradi-Paks containing the Geri Care Eye Wash directly to those eye banks without the use of a downstream distributor." (ECF 96-1, Mot. at 15). Stradis responded: "Stradis admits that the subject Custom Stradi-Paks that it supplied to KeraLink contained Geri-Care Eye Wash. Stradis denies the remaining statements in this Request." (*Id.*).

Geri-Care requests that the court order Stradis to explain what, in particular, it is denying and the basis for its denial, because "it remains unclear what 'remaining statements' Stradis is denying[.]" (*Id.*) The court does not believe further explanation is necessary under Rule 36(a)(4). Stradis's answer is an appropriate partial admission qualified by a denial as it admits that the Custom Stradi-Paks supplied to KeraLink contained Geri-Care Eye Wash and denies the remainder

of the request, which asks Stradis to admit the location of various eye banks and that Stradis delivered the Custom Stradi-Paks without the use of a downstream distributor. Accordingly, the court will deny the motion as it relates to request 30.

***

In sum, the court finds that all of Stradis's challenged responses to Geri-Care's requests for admission are either satisfactory under Rule 36 or that relief for any insufficiency is not appropriate at this time. Geri-Care's motion as to Stradis's responses will be denied in full.

## CONCLUSION

For the reasons stated above, the court will grant in part and deny in part Geri-Care's motion to exclude Stradis's expert witnesses Robin Nalley and Patrick Walker and will deny Geri-Care's motions challenging the sufficiency of KeraLink's and Stradis's responses to Geri-Care's requests for admission.

A separate Order follows.


    3/30/2021                                   /S/
Date                                        Catherine C. Blake
                                            United States District Judge